UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL MULCH COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14CV446 RLW |
| | ) |
| NOVEL IDEAS, INC., | ) |
| JOHN S. WINK, and | ) |
| SOUTH BEND MODERN MOLDING, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss or Transfer Venue (ECF No. 41).[1] The motion is fully briefed and ready for disposition. For the reasons set forth below, the Court will grant Defendants' motion.

## Background

On March 11, 2014, Plaintiff IMC filed a four count Complaint for Declaratory Judgment against Defendant Novel Ideas, Inc. ("Novel"), seeking in Counts I and III a declaration of non-infringement of two landscape edging patents, U.S. Patent Nos. D649,268 and D654,191, held by Novel and John S. Wink. (Compl., ECF No. 1) IMC also sought a declaration that the patents at issue were invalid in Counts II and IV. (*Id.*) IMC filed an Amended Complaint on June 16, 2014, adding John S. Wink ("Wink"), the inventor of the patented landscaping products, and South Bend Modern Molding, Inc. ("Modern Molding"). (First Am. Compl., ECF No. 14). In addition, IMC alleged breach of contract (Count V) and

---

[1] Plaintiffs Novel Ideas, Inc. and John S. Wink filed the original motion, with Defendant South Bend Modern Molding, Inc. ("Modern Molding") joining the motion with regard to Plaintiff's tortious interference claims against Modern Molding. (Supplemental Br. in Supp. of Co-Defs.' Mot. to Dismiss, ECF No. 48)

tortious interference with business expectancy (Count VI).  (*Id.*)  On September 11, 2014, the Court granted IMC's Motion for Leave to File its Second Amended Complaint, wherein IMC provided additional facts.  (Second Am. Compl., ECF No. 39)

In its Second Amended Complaint, IMC alleges that Defendants Novel and Wink are located in Tampa, Florida.  (*Id.* at ¶¶ 2-3)  Defendant Modern Molding is an Indiana corporation located in Mishawaka, Indiana.  (*Id.* at ¶ 4)  Plaintiff further asserts that jurisdiction in this Court is proper because Novel and Modern Molding do substantial business in this District, Novel contracted to sell its assets to IMC in this District, and Wink and Modern Molding tortuously interfered with IMC's contract and/or business expectancy in this District.  (*Id.* at ¶¶ 8-10)  IMC also contends that venue is proper because one or more Defendants engage in significant business activity in this District.  (*Id.* at 11)

According to IMC's complaint, Wink invented flexible landscape edging and obtained two patents, the 268 Patent and the 191 Patent, and he assigned the title and interest in those patents to Novel.  (*Id.* at ¶¶ 12-13)  Plaintiff IMC began selling a lawn edging to Lowe's, which Defendants Novel and Wink contend infringes on the patents.  (*Id.* at ¶¶ 14-15)   IMC disputes that its product infringes, as IMC alleges the ornamental design of the edging differs from the design claimed by the 268 and 191 Patents.  (*Id.* at ¶¶ 16-17)  Additionally, IMC maintains that it had been in negotiations to purchase Novel's assets for several months prior to infringement communications from Novel and Wink.  (*Id.* at ¶ 19)  IMC alleges that it negotiated with Novel agreed in principle to terms which were summarized in drafts of a letter of intent.  (*Id.* at ¶¶ 20-25)  However, Wink expressed to IMC that he and Novel would not honor the letter of intent.  (*Id.* at ¶¶ 28-29)  IMC argues that the emails and letter of intent formed a valid contract, which

Defendants Novel and Wink breached when they negotiated with Modern Molding. (*Id.* at ¶¶ 51-52) In addition, IMC contends that Wink and Modern Molding intentionally interfered with and caused Novel to breach the contact by negotiating a separate contract to purchase Novel's assets. (*Id.* at ¶ 61)

On September 29, 2014, Defendants Novel and Wink filed a Motion to Dismiss or Transfer Venue, claiming that the case should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and the case should be dismissed under Fed. R. Civ. P. 12(b)(3) for improper venue or transferred to the Middle District of Florida. (Mot. to Dismiss, ECF No. 41) Further, Defendants contend that Counts V and VI should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (*Id.*)

## II. Legal Standards

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a prima facie showing that personal jurisdiction exists." *Riceland Foods, Inc. v. SCF Marine, Inc.,* No. 4:09CV830 CDP, 2009 WL 2928764, at *2 (E.D. Mo. Sept. 9, 2009) (citation omitted). The court views the evidence in the light most favorable to the plaintiff and determines factual conflicts in favor of the plaintiff. *Id.* (citation omitted). However, a plaintiff must produce some evidence, and conclusory allegations are insufficient to make a prima facie case. *Id.* (citation omitted). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motion[ ] and in opposition thereto." *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004) (citation and internal quotations omitted). The party seeking to establish personal jurisdiction carries the burden of proof, and this burden does not shift to the party challenging jurisdiction. *Riceland*

3

*Foods*, 2009 WL 2928764, at *2 (citation omitted). "While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted).

To determine whether personal jurisdiction exists, the forum state's long-arm statute must be satisfied, and the exercise of personal jurisdiction must be consistent with due process. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir. 2010) (citation omitted). "In its most recent decision involving a question of personal jurisdiction, the Missouri Supreme Court held it was necessary to conduct two separate inquiries: one inquiry to establish if a defendant's conduct was covered by the long-arm statute, and a second inquiry to analyze whether the exercise of jurisdiction comports with due process requirements." *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 909 (8th Cir. 2012) (citing *Bryant v. Smith Interior Design Grp., Inc.,* 310 S.W.3d 227, 231 (Mo. 2010).

Under Missouri's Long Arm Statute:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this state;
>
> (2) The making of any contract within this state;
>
> (3) The commission of a tortious act within this state;

Mo. Rev. Stat. § 506.500.1.

Due process requires that minimum contacts exist between a nonresident defendant and

4

the forum states such that the exercise of personal jurisdiction is consistent with traditional notions of fair play and substantial justice. *Wells Dairy*, 607 F.3d at 518 (citations omitted). "'Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there.'" *Id.* (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir. 1994)). A defendant reasonably anticipates being haled into the forum state's court where the defendant performs some act by which it "'purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Bell Paper Box*, 22 F.3d at 818-19).

The Eighth Circuit Court of Appeals has established a five-part test to measure a defendant's contacts with the forum state:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Id.* (quoting *Bell Paper Box*, 22 F.3d at 819). Courts evaluate personal jurisdiction under the theories of general jurisdiction and specific jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011); *Dever*, 380 F.3d at 1073.

Under the general jurisdiction theory, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever*, 380 F.3d at 1073 (citation omitted). Specific jurisdiction, on the other hand, requires that "the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id.* (citation omitted). The third factor of the five-factor test, the relation of the cause of action to the

5

contacts, distinguishes between the two theories. *Wells Dairy,* 607 F.3d at 518.

With regard to a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (abrogating the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *Id.* at 555; *see also Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff). While the *Twombly* Court cautioned that the holding does not require a heightened fact pleading of specifics, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *Id.* at 556.

## Discussion

### A. Specific Jurisdiction

Plaintiff IMC first argues that this Court has specific jurisdiction over Defendants Novel and Wink because they took purposeful actions toward Missouri by soliciting IMC, negotiating with IMC, and ultimately reaching an agreement. IMC contends that the parties agreed IMC's

6

counsel in Missouri would draft the initial version of the agreement, which required Novel to provide access to data related to Novel's assets and send documents to IMC in Missouri. Further, IMC asserts that the agreement contained a choice of law provision indicating that the laws of Missouri applied, as well as a provision for resolution of a lawsuit. (Mem. in Support of Mot. to Dismiss Ex. A and B, ECF No. 42-2) According to IMC, the parties contemplated ultimately executing a "Definitive Agreement" for IMC to purchase Novel's assets, including the two patents at issue. Further, they would enter into a "Commission and Research and Development Agreement" where Novel would provide consulting services and additional product lines to IMC in exchange for a commission. Finally, Novel would assign its Home Depot account to IMC. (*Id.*) IMC argues that these actions taken by Novel and Wink were not random, attenuated, or fortuitous but were intentionally created and carried out by Defendants such that they should not be surprised that IMC chose Missouri to file suit. IMC additionally claims that the quantity of contacts by Novel and Wink in the State of Missouri supports personal jurisdiction. IMC asserts that the negotiations surrounding the agreement lasted for nine months, included the parties and attorneys, and resulted in numerous and substantial communications. (*Id.* at Ex. A – D)

Defendants argue that this Court does not have specific jurisdiction because, despite the emails and calls to negotiate a possible contract, Wink and Novel never signed the letter of intent. Further, Defendants assert that they do not conduct any business in Missouri, and all revenue is earned in Indiana, where Novel's products are sold to retailers F.O.B. (free on board). (Decl. of John S. Wink ¶¶ 4, 6, ECF No. 42-1) In addition, in person meetings between Defendant Wink and IMC took place in Florida. (*Id.* at ¶ 8)

The undersigned finds that Novel and Wink's contacts with Missouri are insufficient for this Court to exercise specific jurisdiction. First, Plaintiff IMC has not established that Defendants' conduct is covered by Missouri's Long Arm Statute. While IMC drafted and executed a letter of intent, Defendants did not sign the agreement, in Missouri or elsewhere. Although IMC's Complaint contains a breach of contract claim, the existence of a contract is unclear. Further, while Plaintiff IMC argues that a tort was committed in Missouri, the record shows that the alleged tortious interference occurred either in Florida or Indiana, where Defendants Novel and Wink negotiated and eventually entered into a contract with Defendant Modern Molding. (*Id.* at ¶ 9; Second Am. Compl. ¶ 28, ECF No. 39)

However, even if the parties reached an Agreement, the Court finds that such agreement is not sufficient to establish jurisdiction over Defendants in Missouri. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011) (citation omitted) ("A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state."). "[C]ourts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (citations omitted).

Here, Plaintiff IMC contends that the choice of law provision in the letter of intent indicates the Defendants intended for any disputes arising from the agreement to be settled in Missouri. However, while a choice of law provision can provide evidence of a defendant's purposeful relationship with and foreseeability of possible litigation in the forum state, choice of law provisions are insufficient to confer personal jurisdiction on their own. *Id.* at 821-22

(citation omitted). Further, the Court notes that the letter of intent did not specify the production or sale of products in Missouri. The terms merely contemplated the "Possible Acquisition" of assets pursuant to a future "Definitive Agreement." In addition, the letter envisioned a "Commission and Research and Development Agreement" whereby Defendants would provide consulting services and additional product lines, but the letter is silent as to where these services and production would take place or what particular impact the agreement would have on Missouri. Further, the letter of intent indicated that any "Definitive Agreement" was contingent upon due diligence investigation that had not yet taken place. In short, the Defendants have no employees or offices in Missouri; have never traveled to Missouri in connection with the alleged agreement; and allegedly breached the agreement outside Missouri by negotiating with Modern Molding in Indiana. Simply because a Missouri company felt the breach does not equate to a Missouri court having jurisdiction over the non-resident defendants consistent with due process. *Id.* at 822. The Court finds, therefore, that the choice of law provision in this case does not evidence Defendants' intention to do business in Missouri. *Id.*

Plaintiff IMC also argues, however, that this Court has personal jurisdiction over Novel and Wink due to the nature and quality of the contacts, as well as the quantity, which included phone calls and emails pursuant to Defendants soliciting IMC to purchase Defendants' assets. IMC contends that the negotiations spanning nine months were sufficient to confer personal jurisdiction over Defendants in Missouri. While the record indicates email communications and telephone discussions, the undersigned finds that the nature, quality, and quantity of Defendants' contacts were insufficient to demonstrate purposeful availment of the forum state. "Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not

9

themselves establish jurisdiction." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996). Further, simply knowing that IMC was a Missouri corporation does not create minimum contacts because "'the plaintiff cannot be the only link between the defendant and the forum.'" *Fastpath*, 760 F.3d at 823 (quoting *Walden v. Fiore* ___ U.S. ___, 134 S. Ct. 1115, 1125 (2014)). Thus, IMC has failed to meet its burden of proof with regard to the nature and quality of the contacts, as well as the quantity of contacts with the forum state.

Likewise, Plaintiff IMC has failed to demonstrate a relationship between the contacts and the cause of action sufficient to satisfy personal jurisdiction. With regard to IMC's allegations that the communications and letter of intent formed a contract, the Court notes that IMC's breach of contract claim is related to the contacts between Plaintiff and Defendants. However, as stated above, Missouri's connection to the terms set forth in the letter is tenuous at best. With regard to IMC's tortious interference claim, Courts apply the *Calder* effects test where a plaintiff alleges a tortious injury:

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered-[in the forum state].

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)). In the Eighth Circuit, courts use "the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Id.* In other words, courts construe the effects test narrowly "and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797.

Here, accepting Plaintiff's tortious interference allegations as true, the Court finds that IMC has satisfied the first and third *Calder* factors in that Wink negotiated a separate proposal with Modern Molding after negotiating with IMC, and Wink and Modern Molding knew Plaintiff would feel the effects in Missouri. However, IMC has not shown that Defendants' actions were uniquely or expressly aimed at the forum state. "Although the harm to plaintiff's business might have been felt in Missouri, that effect does not create minimum contacts." *Trim Fit, LLC v. Dickey*, No. 4:06-CV-0049 CEJ, 2006 WL 1134672, at *3 (E.D. Mo. Apr. 25, 2006); *see also Keystone Publishers Service, Inc. v. Ross,* 747 F.2d 1233, 1234 (8th Cir.1984) (finding insufficient contacts with Iowa where none of the defendants conducted business in Iowa, and "[t]he only contacts alleged by [plaintiff] are interferences with renewal contracts *outside* the State of Iowa causing damages to plaintiff *in* Iowa."). While IMC alleges damages resulting from the alleged tortious interference, nothing in the pleadings indicates that the acts were expressly aimed at Missouri. As previously stated, the letter of intent is silent as to Missouri's role in the parties' negotiations and possible future agreement. Thus, the undersigned finds that IMC has failed to allege additional contacts that would support this Court's exercise of specific personal jurisdiction over Defendants. *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010); *but see K-V Pharm.,* 648 F.3d at 595-96 (finding specific jurisdiction existed where the parties had a long-term contract which required a continuing relationship in Missouri; met face-to-face in Missouri; shipped the product to Missouri; made payments to K-V, which was based in Missouri; and demonstrated a relationship between defendant's contacts with Missouri and the breach of contract and misappropriation of trade secrets claims).

Likewise, with regard to Plaintiff's patent claims, the Court finds that the cease and desist

11

letter written to Lowe's is insufficient to confer specific jurisdiction. "[A] defendant patentee's mere acts of making, using, offering to sell, selling, or importing products – whether covered by the relevant patent(s) or not – do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there."). To satisfy specific jurisdiction, a plaintiff must show that the defendant has engaged in "other activities" that "relate to" the enforcement of those patents in the forum. *Avocent*, 552 F.3d at 1334.

In the present case, IMC has failed to show that Defendants engaged in activities relating to the enforcement or defense of the validity of the patents. *Id.* In addition, the parties merely contemplated the purchase of Novel's assets and patents. "Thus, the alleged negotiations at issue here, which did not even result in 'a binding obligation in the forum,' cannot, by themselves, create personal jurisdiction in this declaratory judgment action." *RxHeat, LLC v. Thermapure, Inc.*, No. 4:10CV2401 JCH, 2011 WL 998158, at *4 (E.D. Mo. March 17, 2011) (citation omitted).

With regard to the final two factors, the Court finds that, while Missouri has an interest in providing a forum for its residents, "that interest 'cannot make up for the absence of minimum contacts.'" *Fastpath*, 760 F.3d at 824 (quoting *Digi-Tel*, 89 F.3d at 525)). Further, the fact that Missouri is a more convenient forum for IMC does not give Missouri courts personal jurisdiction

over the Defendants.  *Id.*  In short, Due Process does not permit this Court to exercise specific jurisdiction over the Defendants in this case.  *Id.*

### **B.  General Jurisdiction**

Plaintiff IMC claims that this Court has general subject matter jurisdiction over Defendants Novel and Wink but maintains that further discovery is necessary.  Plaintiff asserts that entering into exclusive license agreements or distribution agreements with respect to patents constitute other activities directed at the forum state.  Specifically, IMC contends that further discovery could reveal that Novel's agreement with Home Depot, or its distribution of its products generally, and could satisfy the "other activities" element for minimum contacts.  Defendants, on the other hand, argue that Novel is neither present, nor does it conduct substantial business, in Missouri, such that its affiliations with Missouri are nonexistent.  Further, Defendants claim that Wink resides in Florida and that limited jurisdictional discover is unnecessary.

Under Missouri law, general jurisdiction over an out-of-state corporation exists "when that corporation is 'present and conducting substantial business in Missouri.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.,* 646 F.3d 589, 595 (8th Cir. 2011) (quoting *State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 167 (Mo. 1999)).  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ US. ___, 131 S. Ct. 2846, 2851 (2011) (citation omitted).

Plaintiff IMC argues that limited discovery would reveal Defendants' connections to

Missouri through its sales agreement with Home Depot, as well as the shipping of its products from Indiana to end-users in Missouri. However, the Supreme Court has clarified "that placing products in 'the stream of commerce' is '[a] connection so limited between the forum and the foreign corporation [that it] is an inadequate basis for the exercise of general jurisdiction.'" *Viasystems*, 646 F.3d at 597 (quoting *Goodyear*, 131 S. Ct. at 2851). Thus, the Court finds that jurisdictional discovery is unwarranted, as the information sought pertains to the stream of commerce and would not support IMC's claim that general jurisdiction exists. *Id.* at 598. Likewise, Plaintiff's assertion that discovery would reveal that jurisdiction exists is "entirely speculative and '[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'" *Id.* (quoting *Dever,* 380 F.3d at 1074 n.1). The undersigned will therefore deny Plaintiff's request for jurisdictional discovery.

Because this Court finds that it does not have jurisdiction over this matter, the Court declines to entertain the motion to dismiss for failure to state a claim. However, the Court will grant Defendants' request to transfer the cause of action to the Middle District of Florida, where venue is proper. 28 U.S.C. § 1391(a).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or Transfer Venue (ECF No. 41) is **GRANTED** in part, and Cause No. 4:14CV446 RLW is **TRANSFERRED** to the United States District Court for the Middle District of Florida for further proceedings.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Answer after Ruling on Motion to Dismiss filed by Defendants Novel Ideas, Inc. and John S. Wink (ECF No. 43) is

**DENIED** as **MOOT.**

Dated this  2nd  Day of December, 2014.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

## III. Discussion

### A. General Jurisdiction